**STATE of Alaska, Petitioner,**

v.

**Elizabeth WASKEY, Respondent.**

**No. A–4125.**

Court of Appeals of Alaska.

July 17, 1992.

Nancy R. Simel, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for petitioner.

Kevin F. McCoy, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for respondent.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

OPINION

MANNHEIMER, Judge.

An Anchorage grand jury indicted Elizabeth Waskey for third-degree assault, AS 11.41.220(a)(1)–(2). Superior Court Judge Milton Souter dismissed the indictment because the prosecutor who presented the case to the grand jury did not give the grand jury the special instruction on the definition of "dangerous instrument" this court required in *Konrad v. State,* 763 P.2d 1369, 1374–75 (Alaska App.1988). The State has petitioned for review of the dis-

missal of the indictment. We reverse the decision of the superior court and reinstate the indictment.

The evidence presented to the grand jury showed that, on the afternoon of May 5, 1991, Waskey drove through a stop sign at the intersection of North Price and Richmond Avenue, turned into the wrong lane of North Price, and struck an eleven-year-old bicyclist. The handlebar of the bicycle hooked the front bumper of Waskey's car; Waskey dragged the bicyclist 140 feet before stopping. Waskey was apparently intoxicated; when she submitted to a breath test afterwards, the result was .306 percent blood alcohol, over three times the legal limit. Through good fortune, the child was not seriously injured.

Waskey was indicted for third-degree assault under both clauses of AS 11.41.220(a):

(a) A person commits the crime of assault in the third degree if that person recklessly

(1) places another person in fear of imminent serious physical injury by means of a dangerous instrument; or

(2) causes physical injury to another person by means of a dangerous instrument.

At the grand jury proceedings, the prosecuting attorney argued that Waskey's automobile had been the "dangerous instrument" required by the statute. The prosecutor read the grand jurors the statutory definition of "dangerous instrument" under AS 11.81.900(b)(11):

"dangerous instrument" means any deadly weapon [as defined in AS 11.81.900(b)(13)] or anything that, under the circumstances in which it is used, attempted to be used, or threatened to be used, is capable of causing death or serious physical injury[.]

Waskey asked the superior court to dismiss this indictment, arguing that the prosecutor had failed to adequately instruct the grand jury on the meaning of "dangerous instrument". Citing this court's decision in *Konrad*, Waskey argued that the statutory definition of dangerous instrument is insufficient guidance to the grand jury in a case like hers, where "the defendant is alleged to have used a dangerous instrument that was not a 'deadly weapon' and that did not actually inflict death or serious physical injury". *Konrad*, 763 P.2d at 1374–75. The superior court agreed with Waskey that *Konrad* required dismissal of the indictment.

We believe that Waskey's reading of *Konrad* is too broad. In *Konrad*, the defendant had beaten his wife with his hands, striking her once in the head and once in the ribs; the blow to Ms. Konrad's ribs ruptured her spleen, causing her severe abdominal pain, but the injury healed itself without medical intervention. *Konrad*, 763 P.2d at 1372. Konrad was charged with third-degree assault under AS 11.41.220(a)(2) for "recklessly ... caus[ing] physical injury to another person by means of a dangerous instrument." The prosecutor gave the grand jury the statutory definition of dangerous instrument and, additionally, told the grand jury that "in the State of Alaska, hands or feet can be considered a 'dangerous instrument' under the definition that I have given you". *Id.* at 1372.

This court invalidated Konrad's indictment on two grounds. First, there was a troubling ambiguity in the prosecutor's ancillary instruction that hands or feet "can be considered" dangerous instruments under Alaska law; the grand jurors might have taken the prosecutor's statement to mean that, under Alaska law, striking another person with one's hands or feet constitutes the use of a dangerous instrument. *Konrad*, 763 P.2d at 1374. Second, this court found that, "even without the ambiguous instruction, ... the circumstances of the present case [were] sufficiently unique to require a specific admonition to the grand jury concerning [how] to determine whether a dangerous instrument had been used." *Id.* The problem was that the grand jury might have voted to indict Konrad based upon their evaluation of a human hand's potential for inflicting serious physical injury "as an abstract or hypothetical matter" rather than based upon evidence establishing how Konrad had used his hand in the particular circumstances of his case. *Id.* at 1375. Speaking of the evidence

presented at Konrad's trial, this court noted:

> [T]here is nothing in the record to establish that the manner in which Konrad used his hands was inordinately violent or particularly calculated to inflict serious physical injury. No evidence was offered to suggest that Konrad had received martial arts training or that he was otherwise skilled in using his hands to inflict physical injury.... [T]here was no evidence to suggest that [Ms. Konrad] was especially susceptible to incurring a serious physical injury ... [or] that she was vulnerable to suffering [an] injury more serious than [the injury] actually inflicted[.]

*Konrad,* 763 P.2d at 1375. This court concluded that, in such cases, an instruction should be given to "alert the grand jury to the need ... to find, based upon the evidence in the case before it, that the defendant used an instrument in a manner that actually created a substantial risk of death or serious physical injury" as opposed to an instrument that might theoretically have created such a risk under some imaginable circumstances not supported by the evidence. *Id.*

■ Waskey interprets *Konrad* as establishing a "bright-line rule" that a special instruction on the meaning of dangerous instrument must be given whenever "the defendant is alleged to have used a dangerous instrument that is not a 'deadly weapon' and that did not actually inflict death or serious physical injury". *Konrad,* 763 P.2d at 1374–75. However, this language from the *Konrad* decision must be interpreted in the context of the unique circumstances of Konrad's case.

Konrad struck another person once in the head and once in the ribs. These blows were apparently of ordinary force and delivered in an ordinary manner. This type of assault can conceivably inflict serious physical injury, but many such assaults would not reasonably be expected to leave lasting injury. Thus, when an assault is committed by hands or fists only, and when no serious physical injury has been inflicted, it is important to apprise the grand jury

that such an assault will be considered a felony only when the evidence in the particular case shows that the defendant used his or her hands in a manner that actually created a substantial risk of death or serious physical injury to the victim.

By contrast, Waskey's assault involved a collision between an automobile and a bicyclist. Because of an automobile's solidity and mass, an automobile is normally easily capable of inflicting death or serious physical injury in such circumstances. While it is possible to imagine collisions between an automobile and a pedestrian or a cyclist that one might not expect to result in serious physical injury (for instance, when the driver's failure to set the parking brake leads to a collision at 2 miles per hour), these are clearly exceptional cases.

■ Under any reasonable construction of the facts of Waskey's case, her automobile constituted a "dangerous instrument" within the statutory definition. The circumstances of Waskey's collision with the bicyclist show that her car was easily capable of inflicting serious physical injury or death; indeed, the bicyclist's escape with only minor injuries was completely fortuitous.

This is the key distinction between Waskey's case and *Konrad.* In *Konrad,* the defendant used only his fists, and he used them in a manner that left open a significant factual question: whether the defendant's particular mode of assault created a substantial risk of serious physical injury or death. As Waskey conceded at oral argument, her case does not present this issue, and there is no reasonable possibility that the grand jurors' decision to indict Waskey for third-degree assault would have changed if they had received the type of ancillary instruction specified in *Konrad.*

Waskey suggests that, even though giving a clarifying instruction would not alter the result in her case, this court should nevertheless require the State to give such an instruction in all cases, out of caution. However, it appears to us that *Konrad* represents the unusual case, while Waskey's case is more representative of third-

degree assaults. We see no advantage in creating a rule that will make a difference only in exceptional cases and whose violation will normally be harmless error.

The judgement of the superior court is REVERSED. The third-degree assault charge against Waskey is reinstated.